Having considered the applicable factors, *see Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335–36 (S.D.N.Y. 2012), I find the settlement to be fair, reasonable and adequate, and hereby approve it pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). I also approve the attorney fee as fair and reasonable. The Court will enter the stipulation of dismissal and close the case.

SO ORDERED.

*Cathy Seibel*    4/8/21

CATHY SEIBEL, U.S.D.J.

# CILENTI & COOPER, PLLC
ATTORNEYS AT LAW
10 Grand Central
155 East 44th Street – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102

April 6, 2021

**BY ECF**

Hon. Cathy Seibel, U.S.D.J.
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10607

      Re:    *Justo v. El Marinero Restaurant Inc., et al.*
            *Case No. 20-CV-172 (CS) (PED)*

Dear Judge Seibel,

      We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with counsel for defendants seeking the Court's approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

      **I.**     *The Need for the Court's Approval of the Agreement*

      As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

## II.     Plaintiff's Claim for Unpaid Wages

Plaintiff is a former employee hired to work as a kitchen helper/food preparer for the defendants' restaurant. Plaintiff alleges working for the defendants from in or about 2012 until on or about December 8, 2019. Plaintiff contends working six (6) days per week for a total of seventy-four (74) hours per week. According to plaintiff, each work shift exceeded ten (10) hours.

With respect to his pay, plaintiff alleges that he was paid on a salary basis straight time for all hours worked. He contends being paid as follows:

- January 2014 – December 2014: $550/week[1]
- January 2015 – August 2019: $750/week
- September 2019 – December 8, 2019: $890/week

Based on the foregoing, plaintiff calculated that he is owed approximately 162,500 in underlying unpaid wages and "spread of hours" premium.

## III.    Defendants' Contested Facts and Alleged Financial Hardship

In contrast, the defendants contend that plaintiff's version of events is factually inaccurate. Plaintiff claims he worked for the defendants six (6) days per week, and seventy-four (74) hours per week, every single week from January 2014 – December 2019 ("Relevant Period"). Defendants maintain that is simply untrue (not to mention facially incredible). For example, according to the defendants, plaintiff did not even work for the defendants at all for two (2) very significant time frames, totaling approximately five (5) months, during the Relevant Period. As another example, according to the defendants, plaintiff's hours were far different than he claims for very significant portions of the Relevant Period. Thus, plaintiff is not entitled to receive any overtime compensation or "spread of hours" pay during this time. Defendants were prepared to establish this through third party sources.

In addition, the FLSA protects employees by mandating that employers pay their employees at least the minimum wage described in the Act and one and one-half times the regular rate of pay for overtime. 29 U.S.C. § 206(a)(1), 207(a)(1) (2007). But the FLSA does not apply to all employers. The FLSA only protects employees who (1) engage in commerce or in the production of goods for commerce or (2) are employed in an enterprise engaged in commerce or in the production of goods for commerce. *Id.* Thus, to survive summary judgment, Justo must show that, while he worked a El Marinero, he (1) engaged in commerce or the production of goods for commerce–individual coverage; or (2) worked for an enterprise engaged in commerce or in the production of goods for commerce–enterprise coverage. *See Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003).

El Marinero is a very small local restaurant (approximately 400 sf, including the kitchen) in south-west Yonkers that, according to the defendants, does not engage in interstate commerce,

---

[1] The relevant six (6) year limitations period begins in January 2014.

Hon. Cathy Seibel, U.S.D.J.
April 6, 2021
Page 3

nor does its annual gross revenue come anywhere near the $500,000 threshold. In addition, it is not disputed that plaintiff worked as a kitchen helper—he did not order or purchase goods, products or supplies; pay bills for El Marinero; take orders from customers in any fashion; nor correspond in any way with customers, vendors, merchants or suppliers. Further, the Supreme Court has held that cooks are not entitled to FLSA's individual coverage. *McLeod v. Threlkeld*, 319 U.S. 491, 493 (1943). As such, Defendants had a potentially meritorious legal argument that this Court lacked jurisdiction.

Perhaps more importantly, even assuming plaintiff's version of events were credited, because of the size and revenue of the business, and the interceding pandemic, there would have been no ability for the defendants to satisfy such a judgment.

### IV.   The Settlement

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $37,000 to resolve all of plaintiff's wage and hour claims against the defendants, payable in full within ten (10) business days of the Court's approval of the Agreement and dismissal of the case.

### V.   The Agreement is Fair and Reasonable

We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about the value of plaintiff's claims.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions, as well as through mediation before Margie Echevarria, Esq., on January 25, 2021. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

Moreover, one concern tending toward settlement was plaintiff's legitimate concern about the collectability of an unsatisfied judgment against the defendants. *See Cabrera v. Roselea Int's Services*, No. 10 Civ. 241, 2011 U.S. Dist. LEXIS 152268, at *12 (M.D. Fla. Dec. 30, 2011) (compromised settlement deemed reasonable in light of plaintiff's legitimate

Hon. Cathy Seibel, U.S.D.J.
April 6, 2021
Page 4

collectability concerns). There is always risk that a corporate defendant will have no collectable assets for this uninsured claim. This is especially true here as the defendants would likely not be able to withstand a larger settlement or judgment. Defendants operate a small neighborhood restaurant with limited financial resources. The Agreement significantly decreases the risk of collection by requiring the defendants to remit payment of the entire settlement sum within a few days of the Court's approval.

In light of the various disputes concerning plaintiff's claims, as well the risk of ongoing litigation, this settlement should be approved. By settling now, plaintiff receives some of his underlying unpaid wages even after attorneys' fees and costs are deducted, while enabling the parties to avoid the risks inherent in protracted litigation and trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiff during mediation, he made the decision to accept the defendants' offer. It is respectfully submitted that, in view of the foregoing, this settlement is a reasonable compromise of disputed issues and should therefore be approved.

### VI. Application for Attorneys' Fees

Pursuant to this firm's retainer agreement with plaintiff, our firm seeks retain one-third of the net proceeds of the settlement after expenses are deducted.[2] Therefore, counsel seeks $12,134.78 in fees, and $592 in costs, for a total fee application of $12,726.78, which is approximate with counsel's lodestar (see billing statement attached).

Attorneys' fees in FLSA settlements are examined, to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. See *Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiffs' counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees. Additionally, as stated above, plaintiff is being made whole even after fees and costs are deducted.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, courts routinely hold that a contingency fee award is presumptively valid where "the proposed fee amount is exactly one-third of the net settlement amount, which is an amount routinely approved under the percentage method" in this District, "particularly where it is pursuant to a previously negotiated retainer agreement." See *Yunjian Lin v. Grand Sichuan 74 St Inc.*, No. 15 Civ. 2950, 2018 U.S. Dist. LEXIS 110266, at *15-16 (S.D.N.Y. July 2, 2018) (citations omitted); *Daniels v. Haddad*, 17 Civ. 8067, 2018 U.S. Dist. LEXIS 212861, at *2-3 (S.D.N.Y. Dec. 17, 2018). Here, plaintiff agreed to a one-third contingency retainer agreement with counsel in connection with his wage-and-hour claims.

---

[2] The firm's expenses total $592 consisting of the filing fee to commence the action ($400), and service of process ($192).

Hon. Cathy Seibel, U.S.D.J.
April 6, 2021
Page 5

     If the Court were to analyze counsel's fees on a lodestar basis, the Court should still approve the Agreement. Counsel's lodestar is approximate with the fees requested herein. Cilenti & Cooper, PLLC's requested rates ($400 per hour for lawyers and $100 for paralegal) have repeatedly been approved as reasonable. *See Rescalvo v. BTB Events & Celebrations Inc.*, 16 Civ. 7647 (PAE) (S.D.N.Y. Jan. 24, 2018); *Gonzalez, et al. v. Crosstown Diner Corp., et al.*; No. 16 Civ. 2544 (BCM) (S.D.N.Y. 2017); *Sierra v. Skyline Gourmet Deli*, No. 15 Civ. 3319 (SN) (S.D.N.Y. 2016); *Romero v. Lu Woodside Mini Mall, Inc.*, No. 15 Civ. 5030 (PK) (E.D.N.Y. 2016); *Catalan, et al. v. H&H Kim Corp., et al.*, No. 15 Civ. 7443 (DF) (S.D.N.Y. 2016).

     For all of the reasons set forth above, the parties respectfully request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal, which is being submitted simultaneously herewith, that expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

                                              Respectfully submitted,

                                              Justin Cilenti

Enclosures

cc: Adam Rodriguez, Esq. (by ECF)